UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
PRINCE S. TEAH,

        Plaintiff,

-against-

MACY'S INC.,

        Defendant.
-----------------------------------------------------------------x

**NOT FOR PUBLICATION**
**MEMORANDUM & ORDER**
11-CV-1356 (CBA) (MDG)

AMON, Chief United States District Judge:

    Plaintiff Prince Teah ("Teah") has filed suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq, alleging that he was terminated from his position as a sales associate at Macy's Inc. ("Macy's") on account of his race and gender. Macy's has moved to compel arbitration. For the reasons that follow, the motion is granted.

**I. BACKGROUND**

    The following facts have been presented in Macy's motion and supporting exhibits. Teah has not offered any arguments or evidence to contradict this account of the facts.

    In January 2004, Macy's[1] implemented an internal dispute resolution program called the Solutions InSTORE Early Dispute Resolution Program (the "SIS Program"). The SIS Program was revised and reissued with an effective date of January 1, 2007. Apart from a minor administrative change made in 2009, the program has remained unchanged since that date. (Noeth Aff. ¶ 7.) Teah was hired by Macy's on or around March 8, 2010, and worked there until approximately June 30, 2010, and thus was at all times employed under the SIS Program. (Noeth Aff. ¶ 19; Edwards Aff. ¶ 9, Ex. A.)

---

[1] Prior to June 2007, Macy's, Inc. was known as Federated Department Stores, Inc. This opinion will use the name Macy's throughout to avoid confusion. (See Noeth Aff. ¶ 2.)

1

The SIS Program prescribes a four-step process for resolving workplace disputes within the company:

- Step 1: The "Open Door" policy. Employees are encouraged to bring their concerns to a supervisor or local management team.
- Step 2: If the employee is not satisfied with the resolution at Step 1, he may submit a written request for review to the Corporate Associate Relations department. An investigation is then conducted by an executive or designee not involved in the underlying dispute.
- Step 3: If the employee is not satisfied with the Step 2 decision, and the claim involves legally protected rights, the employee may proceed to Step 3. If the dispute involves layoffs, harassment, discrimination, reduction in force or other statutory violations, the claim is directed to the SIS Office, where a professional trained in such issues will investigate it. Other disputes, such as those related to termination or final warnings, may be submitted to a Peer Review Panel. In either case, a decision is made by the SIS Office or the Peer Review Panel, not by the local Macy's management.
- Step 4: The final step in the SIS Program is binding arbitration before a neutral, outside arbitrator. Macy's states that this arbitration provision is "not a mandatory term and condition of employment." Rather, employees are given the option to opt out of Step 4 of the SIS Program if they wish.

(Noeth Aff. ¶ 11; Ex. A.)

Employees are automatically covered by the Step 4 binding arbitration provision unless they choose to opt out within 30 days of their hiring date by completing a written form and returning it to the SIS Office. (Id., Ex. A at 7.) If an employee does not opt out of Step 4 within the required time, both Macy's and the employee thereby agree to be contractually bound to the arbitration process and waive their right to a civil action in the courts. (Id.) The terms of the SIS Program provide that the Step 4 arbitration process applies to "all employment-related legal disputes, controversies or claims arising out of, or relating to, employment or cessation of employment, whether arising under federal, state or local decisional or statutory law." (Id. ¶ 16, Ex. B at 6.) The terms expressly mention Title VII claims as coming within the coverage of Step 4. (Id.)

Macy's takes multiple measures to ensure that employees are aware of the SIS Program and of their right to opt-out of Step 4 arbitration. (See id. ¶¶ 20-30.) First, all new employees receive a brochure about the SIS Program that explains all four steps, as well as the employee's ability to opt out of Step 4. (Id., Ex. A.) The brochure details how arbitration works generally, describes the costs and procedural rules involved, and contains charts comparing the arbitration process to a civil litigation. The brochure also explains that if the employee does not opt out of Step 4, then the arbitration process is binding, covers any dispute about the employee's employment, and is a waiver by both parties of the right to a civil action and jury trial. Also enclosed with the brochure is the SIS Plan Document that sets forth the details of the program in further detail. (Id., Ex. B.)

At the back of the brochure is a simple form that the employee may fill out and return to the listed address to opt out of Step 4. The form reiterates that the employee should read the SIS Program details carefully, and states that if the employee wishes to opt out of Step 4, the form must be returned within 30 days from his hire date.

Upon receipt of the SIS Brochure, the employee is required to physically or electronically sign a form acknowledging that he has received and reviewed the SIS Program materials. The form states that the employee understands that by accepting his job at Macy's he is agreeing to be covered by all four steps of the SIS Program, that this program will encompass all employment disputes, and that he understands the 30 day deadline and procedures for opting out of Step 4 mandatory arbitration. Macy's has provided a copy of Teah's acknowledgment form with his electronic signature. (Id., Ex. D.)

New Macy's employees also participate in an in-person new hire training session. Teah's personnel record indicates that he participated in the new employee training on March 8, 2010.

(Edwards Aff. ¶ 9, Ex. A.)  During this training, the new employee is provided with the SIS Brochure, Plan Document, and opt out form.  A trainer also plays a video explaining the SIS Program and the ability to opt out.  (Noeth Aff. ¶ 29, Ex. F.)  Finally, in the employee service center at the location where Teah worked, there hangs a poster describing the 4-step SIS Program.  (Edwards Aff. ¶ 10.)  The poster also contains the SIS website address that provides employees access to all the program details and documents.  (Noeth Aff. ¶ 27.)

Teah has not disputed that he signed the acknowledgment form, or that he received and understood the SIS Program materials and opt out form described above.

Teah filed this Title VII action on March 17, 2011, alleging that he was fired from his position as sales associate on June 30, 2010 for performing an unauthorized markdown.  (Complaint ¶ 8.)  Teah alleged that he had received inadequate training for his position, and that he believed his termination was in fact motivated by discrimination based on sex and race.  (Id.)  Macy's has submitted that a diligent search of their records reveals that Teah never filed a request to opt out of the SIS Step 4 binding arbitration.  (Noeth Aff. ¶ 30; Edwards Aff. ¶ 11.)  Macy's thus brought this motion seeking to compel arbitration.

## II. APPLICABLE LAW AND STANDARD OF REVIEW

The central provision of the Federal Arbitration Act ("FAA") provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The FAA evidences "a strong federal policy favoring arbitration as an alternative means of dispute resolution." JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 171

4

(2d Cir.2004). Under § 3 of the FAA, a district court, upon application by one of the parties, "must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding." McMahan Securities Co. L.P. v. Forum Capital Markets L.P., 35 F.3d 82, 85 (2d Cir.1994). The Act thus "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 74 (2d Cir. 1997) (quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985)).

Arbitration clauses in employment contracts, other than those of transportation workers, are governed by the FAA, and their scope may properly extend to Title VII claims brought by the employee. See EEOC v. Waffle House, Inc., 534 U.S. 279, 289 (2002) ("Employment contracts, except for those covering workers engaged in transportation, are covered by the FAA."); Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 123 (2001) ("The Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law."); Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144148 (2d Cir. 2004) ("[The] conclusion that Gold's Title VII claims were arbitrable was clearly correct."); Desiderio v. National Assoc. of Securities dealers, Inc., 191 F.3d 198 (2d Cir. 1999) (FAA applies to Title VII claims); EEOC v. Rappaport, Hertz, Cherson & Rosenthal, P.C., 273 F. Supp. 2d 260, 264 (E.D.N.Y. 2003) (noting that it is "well-established that Title VII claims are arbitrable" under the FAA). Accordingly, the Court finds that the FAA applies to the dispute in this case.

5

"Because an agreement to arbitrate is a creature of contract, however, the ultimate question of whether the parties agreed to arbitrate is determined by state law." Bell v. Cendant Corp., 293 F.3d 563, 566 (2d Cir.2002); see First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter . . ., courts generally ... should apply ordinary state-law principles that govern the formation of contracts.") There does not appear to be any dispute that New York contract law should apply where necessary to the present action.

In reviewing motions to compel arbitration brought under the FAA, "the court applies a standard similar to that applicable for a motion for summary judgment." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003); Sanders v. Forex Capital Markets, LLC, 2011 WL 5980202, at *3 (S.D.N.Y. 2011). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." Bensadoun, 316 F.3d at 175. However, "[i]f the party seeking arbitration has substantiated the entitlement [to arbitration] by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." Oppenheimer & Co. v. Neidhardt, 56 F.3d 352, 358 (2d. Cir.1995).

### III. DISCUSSION

Having already concluded that the FAA applies to the arbitration agreement in this case, and that a valid arbitration clause may encompass Title VII claims, the only remaining questions are whether the parties agreed to arbitrate disputes pursuant to a valid contract, and whether Teah's complaint falls within the scope of that agreement. See Rappaport, 273 F. Supp. 2d at 264; Bird v. Shearson Lehman/American Exp., Inc., 926 F.2d 116, 118 (2d Cir. 1991). The Court has no difficulty answering these questions in the affirmative.

*1. The Parties Agreed to Arbitrate Disputes*

First, the uncontroverted record clearly establishes that the parties agreed to arbitrate disputes arising out of Teah's employment at Macy's. It is of course "well settled" under New York law that arbitration will not be compelled absent a "clear, explicit and unequivocal agreement to arbitrate." Fiveco, Inc. v. Haber, 11 N.Y.3d 140, 144, (2008) (internal quotation marks omitted). However, "[a] contract may be formed by words or by conduct that demonstrate the parties' mutual assent." Manigault v. Macy's East, LLC, 318 Fed. App'x 6, 8 (2d Cir. 2009) (citing Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., 448 F.3d 573, 582 (2d Cir.2006); Maas v. Cornell Univ., 94 N.Y.2d 87, 93-94 (1999)). Under New York law, "'[t]he manifestation or expression of assent necessary to form a contract may be by word, act, or conduct which evinces the intention of the parties to contract.' A party's conduct indicates assent when 'he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents.'" Leibowitz v. Cornell Univ., 584 F.3d 487, 507 (2d Cir. 2009) (quoting Maffea v. Ippolito, 247 A.D.2d 366, 668 N.Y.S.2d 653, 654 (1998); Restatement (Second) of Contracts § 19(2)).

Accordingly, courts in this circuit have already upheld the Macy's SIS Program as an enforceable arbitration agreement in cases involving employees who began working at Macy's prior to the program's conception, and who were later notified their right to opt out of the arbitration provision and failed to do so. See Manigault v. Macy's East, LLC, 318 Fed. App'x 6, 8 (2d Cir. 2009) ("Here, [plaintiff] continued to work after receiving notice of the SIS program. [She] therefore agreed to arbitration by continuing with her employment. . . . ."); DuBois v. Macy's East Inc., 338 Fed. App'x 32 (2d Cir. 2009) ("As DuBois continued employment with Macy's after receiving notice of the new dispute resolution program and as he has not presented

sufficient evidence to allow a reasonable factfinder to conclude that he opted out of the associated mandatory arbitration, his continued employment constituted acceptance of the modification of the terms of his employment to include such mandatory arbitration."); cf. Circuit City Stores, Inc. v. Najd, 294 F.3d 1104, 1109 (9th Cir. 2002) ("Here, however, where the import of [employee's] silence was as apparent as if he signed his consent, we may infer assent. . . . When, as here, inaction is indistinguishable from overt acceptance, we may conclude that the parties have come to agreement.").

Here, not only did Teah manifest his assent by declining to opt out of Step 4 after being informed through multiple channels of his ability to do so, the record also demonstrates that Teah electronically signed a document at the commencement of his employment stating that he agreed to be bound by the arbitration provision unless he opted out within 30 days. See Noeth Aff., Ex. D; Rodriguez v. Four Seasons Hotels, Ltd., 2009 WL 2001328 (S.D.N.Y. 2009) (arbitration agreement enforceable against employee who signed document stating he would be bound by arbitration provision unless he opted out, and employee failed to opt out). Teah has not made any attempt to argue that he did not understand the SIS acknowledgment form, that he was not adequately informed of his opt out rights, or that he in fact attempted to opt out. Moreover, "[u]nder New York law, in the absence of fraud or other wrongful conduct, a party who signs a written contract is conclusively presumed to know its contents and to assent to them, and he is therefore bound by its terms and conditions." Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela, 991 F.2d 42, 46 (2d Cir. 1993) (citing Level Export Corp. v. Wolz, Aiken & Co., 305 N.Y. 82, 87 (1953)); see Gold, 365 F.3d at 149.

Teah argues that because his employment was at-will, he cannot be contractually bound by the arbitration agreement. This contention lacks merit. The fact that Teah's employment was

terminable at will does not mean that he cannot be bound by an agreement to arbitrate disputes that arise out of his employment or termination. See DuBois, 338 Fed. App'x at 33 (at-will employee may nonetheless assent to be bound by other "terms of employment" including arbitration agreement); Smith v. Professional Security Bureau, 225 F. Supp. 2d 395, 398 (S.D.N.Y. 2002) (upholding at-will employment agreement that also required arbitration); Bottini v. Lewis & Judge Co., 621 N.Y.S.2d 753, 754 (3d Dep't 1995) (in at-will employment "defendant was free to modify the terms of plaintiff's employment, subject only to plaintiff's right to leave his employment if he found the new terms unacceptable"); Matter of Ball (SFX Broadcasting Inc.), 665 N.Y.S.2d 444, 446-47 (3d Dep't 1997) (at-will employee bound by arbitration agreement). There is clearly adequate consideration for the arbitration agreement, as it binds both parties to arbitrate their claims, and formed part of a valid employment agreement. See Sablosky v. Edward S. Gordon Co., Inc., 73 N.Y.2d 133, 137 (1989) ("If there is consideration for the entire agreement that is sufficient; the consideration supports the arbitration option, as it does every other obligation in the agreement."); Matter of Ball, 665 N.Y.S.2d at 446 ("In this unilateral at-will employment contract, consideration for SFX's promise to pay petitioner for her services is found in her rendition of those services which benefited SFX. Thus, because the employment contract was supported by consideration, the agreement to arbitrate was likewise supported by consideration.").

The Court thus concludes that a contractual agreement to arbitrate employment disputes was properly formed between Teah and Macy's.

*2. The Arbitration Agreement Was Not Unconscionable*

Teah also argues briefly that he does not believe an arbitration will be fair. The Court will interpret this as a claim that the arbitration agreement is unconscionable, but finds that such an argument lacks merit.

"[Q]uestions of contractual validity relating to the unconscionability of [an] arbitration agreement must be resolved first, as a matter of state law, before compelling arbitration pursuant to the FAA." Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360, 365 (2d Cir.2003). Under New York law, a contract will be found unconscionable when it is "so grossly unreasonable . . . in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." Gillman v. Chase Manhattan Bank, N.A., 73 N.Y.2d 1, 10 (1988). Generally, a contract must be both procedurally and substantively unconscionable to warrant invalidation. "The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract, per se." State v. Wolowitz, 468 N.Y.S.2d 131, 145 (1983); see also Desiderio v. National Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 207 (2d Cir.1999) ("A contract or clause is unconscionable when there is an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." (quotation marks omitted)); Nayal v. HIP Network Servs. IPA, Inc., 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009).

As noted previously, Teah does not appear to contest the processes surrounding the formation of the arbitration agreement. Moreover, a recent Second Circuit case held that an arbitration agreement was not procedurally unconscionable under New York law even though it was offered on a "take it or leave it basis," and the plaintiff argued that she had not read or

10

understood the agreement. Ragone v. Atlantic Video at the Manhattan Center, 595 F.3d 115, 122 (2d Cir. 2010). Here, in contrast, Teah was given the option to opt-out of Step 4 while retaining his employment at Macy's, the terms of the SIS Program were provided to him in plain terms through a variety of channels, and he has not argued that he failed to read or understand those terms. The Court thus concludes that the agreement is not procedurally unconscionable.

In the absence of procedural unconscionability, it is only in "exceptional cases where a provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone." Gillman, 73 N.Y.2d at 12; Ragone, 595 F.3d at 122. However, the Second Circuit and the Supreme Court have also emphasized that a federal court should only compel arbitration of a statutory claim, such as a Title VII claim, "if it is clear that 'the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum,' such that the statute under which its claims are brought 'will continue to serve both its remedial and deterrent function.'" Id. at 125 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 (1985)). The arbitration agreement in this case was not substantively unconscionable.

The procedures prescribed by SIS Step 4 are not unduly favorable to Macy's. Step 4 arbitration is binding on both the company and the employee, with respect to claims brought by either party. (Noeth Aff., Ex. B at 6.) An arbitrator is mutually selected from a panel of seven provided by the American Arbitration Association. (Id. at 8-9.) The employee may be represented by an attorney and, if the employee declines attorney representation, Macy's agrees that it also will forego having an attorney present at the arbitration. (Id. at 9.) During the arbitration process, the parties are entitled to discovery and may call witnesses on their behalf.

11

(Id. at 9-11.) The burden of proof is a preponderance of the evidence and rests with the party bringing the arbitration or counterclaim. (Id. at 12.)

The Court also believes that Step 4 allows an employee adequately to vindicate his Title VII rights. The SIS Program terms expressly state that they do not prohibit an employee from filing a charge or complaint with a government agency such as the EEOC—although upon receipt of a right to sue letter, the claim must then proceed to arbitration. (Noeth Aff., Ex. B at 7.) Step 4 employs the same statute of limitations as the substantive law applicable to the claim; the time it takes for the employee to complete Steps 1-3 is added onto this limitations period. (Id. at 8.) An employee who requests an arbitration is only required to pay the lesser of one day's pay or $125, which is refunded in the event the employee prevails. (Id. at 14-15.) Macy's also agrees to reimburse the employee for up to $2,500 of legal fees per 12-month period, subject only to an exception for claims that the arbitrator determines were "frivolously filed." (Id. at 15.) Thus, to the extent the Second Circuit recently expressed skepticism that it would compel arbitration of a Title VII claim where the arbitration agreement provided a 90-day statute of limitations or mandated that attorneys' fees be awarded to the prevailing party, no such concerns are present in this case. See Ragone, 595 F.3d at 125-126.

In sum, there is nothing in the record to suggest that Step 4 arbitration would not be a fair and just way to resolve a Title VII dispute, or would in any way discourage an employee from bringing such a claim. Indeed, it appears that Macy's has gone to some lengths to anticipate possible objections to arbitration agreements, and to make sure that the SIS Program is more generous that the baseline requirements. Thus, the Court concludes that the SIS Step 4 agreement is not unconscionable.

*3. Teah's Claim Falls Within the Scope of the Arbitration Agreement*

Here, the SIS Program documents clearly state that Step 4 will apply to "all employment-related legal disputes," including those "arising under federal, state or local decisional or statutory law" and expressly lists Title VII claims as an example. (Noeth Aff., Ex. B at 6.) The Court thus concludes that Teah's claim falls within the scope of the arbitration agreement, and that Teah was properly on notice that by failing to opt out of Step 4, he would be bound to use arbitration as the exclusive recourse for a Title VII claim. See Cronas v. Willis Group Holdings Ltd., 2007 WL 2739769, at *10 (S.D.N.Y. 2007) ("[C]ourts have required employees to arbitrate discrimination claims only where the arbitration clause specifically 'placed the employee plaintiff on notice that he or she was waiving his or her right to bring employment discrimination claims in the federal courts.'" (quoting Hoffman v. Aaron Kamhi, Inc., 927 F. Supp. 640, 644 (S.D.N.Y.1996)).

*4. Stay or Dismissal of the Present Action*

The Court notes that, in concluding that this matter must be referred to arbitration, it "can exercise its discretion to stay the proceeding or can conclude that the litigation should be dismissed." Guida v. Home Savings of America, Inc., 793 F. Supp. 2d 611, 620 (E.D.N.Y. 2011) (citing Salim Oleochemicals v. M/V Shropshire, 278 F.3d 90, 92–93 (2d Cir.2002)). The decision to dismiss the action, rather than stay it under § 3 of the FAA, has the consequence of making the court's order immediately appealable and thus may slow down the process of actually arbitrating the dispute. Id. In light of the fact that the Second Circuit has expressed the view that "[u]nnecessary delay of the arbitral process through appellate review is disfavored,"

the Court believes a stay is more appropriate than the dismissal requested by Macy's. <u>Salim Oleochemicals,</u> 278 F.3d at 93.

### IV.  CONCLUSION

For the foregoing reasons, the defendant's motion to compel arbitration is granted, and this action is stayed pursuant to § 3 of the FAA.  The Clerk of Court is directed to administratively close this case, subject to its being reopened for the purpose of any additional action necessary following the arbitration proceedings.

SO ORDERED.

Dated:    Brooklyn, New York
          December 29, 2011

                                               _____/s/_____
                                               Carol Bagley Amon
                                               Chief United States District Judge